McBRIDE, Judge.
Plaintiff, a maintenance mechanic in the employ of American Cyanamid Company, brought this suit for workmen’s compensation at the rate of $35 per week for a period not to exceed 400 weeks, plus medical expenses, interest, and penalties, alleging that he is totally and permanently disabled. The suit was dismissed, and plaintiff has appealed.
Plaintiff alleged and testified that on Friday, October 8, 1959, while straightening up from a crouched position he struck the middle of his back toward the left side on a gear lever. However, he continued working on that day, which was a Friday, and two days later on Sunday, while at home, he claimed that while lifting a piece of plywood, he felt his back pain him in the same place. He did not report the accident to the company doctor until Tuesday, October 12.
On May 2, 1960, plaintiff was injured in an automobile accident not connected with his employment, and suffered a fracture of two ribs on the left side. He was off from work for a period of four weeks.
Plaintiff alleges and testified that on July 22, 1960, while in the course and scope of his employment, he was ordered to move a tool box weighing approximately 250 pounds, and while doing so aggravated his previous back injury and sustained a hernia.
Our learned and industrious brother below rendered comprehensive and excellent *78 reasons for judgment and we quote a portion thereof, which observations we now adopt as our own:
“Compensation is not claimed as a result of the injury of October 8th, plaintiff contending that the injury of July 22nd aggravated his previous back condition and caused two herniae in the inguinal region, thus rendering him totally and permanently disabled.
“Plaintiff did not work from August 3, 1960 until May 22, 1961, on which date he returned to his usual and customary duties. Plaintiff further contends that he is working in pain, originating with the initial injury of October 8, 1959 and aggravated by the injury of July 22, 1960, which entitles him, in addition to compensation benefits for the period he did not work, •to future benefits, as he is not required to work in.pain.
“Plaintiff testified that on October 8th, he struck his back with sufficient force to knock himself down, cause difficulty i'n breathing and intense pain 'for three (3) or four (4) minutes. This episode occurred on a Friday. On the Sunday following, while lifting á small piece of plywood at his home, plaintiff again felt pain, which he attributed to the accident of October 8th. On October 12th, he consulted the plant physician, Dr. Laramore, and reported both incidents, but Dr. Laramore did not find any bruises, abrasions, skin discolorations or external evidence of injury.
“Plaintiff, although continuing with his usual work, did complain of pain in the thorolumbar region and was examined by Dr. Laramore on October 16th and December 29th in connection with his complaints, both examinations being negative, and plaintiff stating, according to Dr. Laramore’s testimony, on October 16th that his symptoms had improved. On October 21st he was given his annual physical examination by Dr. Laramore, who testified that plaintiff had no pain on that date.
“On May 2, 1960 plaintiff was injured in an automobile accident, not connected with his employment. He consulted his personal physician, Dr. H. H. Philibert. He sustained one or more fractured ribs and was off work about four (4) weeks as a result of the automobile accident.
“Following this accident, he returned to Dr. Laramore with back complaints on July 8th and July 14th, attributing the cause to his prior industrial accident. Dr. Laramore, being unable to find anything wrong with plaintiff, sent him to Dr. Soboloff, an orthopedic specialist on July 19th. Dr. Soboloff could find no cause for plaintiff’s complaint and further testified that his complaints did not follow any particular muscular or neurological pattern.
“Although plaintiff testified he did suffer back pain and complained of pain in varying degrees of severity following the incident of October 8th, he was able to and did continue his work. The medical testimony is un-contradicted that he was able to perform his duties.
“On July 22nd, plaintiff claims he injured his back, while lifting tools, in the same place as he had injured it on October 8th. He also alleged that he sustained two inguinal herniae on that date, but plaintiff did not testify, nor did any of the other witnesses, that he sustained, or complained of, an injury in the inguinal region on that date.
“Following the second accident, plaintiff saw Dr. Laramore on July 25th, who again was unable to find a cause for his complaints. Plaintiff stated to Dr. Laramore that he was not satisfied with Dr. Soboloff and was given a list of six (6) orthopedic spe *79 cialists from which to select a doctor. Dr. Lenoir was selected, as he could give the earliest appointment. Dr. Lenoir examined plaintiff on July 25th and was unable to find evidence of back injury or the residual of such an injury. He testified that plaintiff was capable of performing his duties. Dr. Lenoir further testified that pain in the lumbar area usually radiated to the groin or testicles; that he particularly asked plaintiff if he had pain in these areas, to which plaintiff replied in the negative.
“Dr. Laramore saw plaintiff on July 26th, 28th and 29th, on all of which occasions plaintiff complained of pain in the same area of his back allegedly struck on October 8, 1959. About that time, plaintiff took his vacation, testifying that he was unable to work due to the pain from which he was suffering.
“On August 3rd plaintiff consulted his family physician, Dr. Philibert, who reported on October 10th the nature of sickness or injury as ‘prostatitis & dialated Rt. inguinal ring with pulsation on strain & cough; Left inguinal ring neg.’. The doctor’s written report stated that the sickness or injury did not arise out of plaintiff’s employment. (Ex. Philibert 3). Plaintiff was suffering pain when he stopped work, hut the Court is convinced that the pain originated with his prostatitis, which Dr. Philibert testified caused low back pain. On September 20, 1960 Dr. Philibert reported the same condition except ‘hernia on rt. side and early on left side’, again stating these •conditions were not connected with plaintiff’s employment. Dr. Gautier confirmed the hernia diagnosis on Oc-tober 9th, but Dr. Roy, one of defendant’s physicians, was unable to find it •on November 11th, nor as stated, had Dr. Lenoir found any discomfort in that area on July 25th.
“Being unable to find a cause for plaintiff’s complaints in the lumbro-sacral area, Dr. Philibert sent plaintiff to á specialist of his selection, Dr. G. C. Battalora, Sr., who examined plaintiff on December 8, 1960. Dr. Battalora did not testify, but his report was admitted into evidence as Exhibit p-2. Dr. Battalora’s report was negative, concluding as follows: ‘We feel that the patient should be able to continue at his previous type of occupation as an industrial mechanic’. Dr. Battalora also examined plaintiff once or twice in May, 1961, but his .reports were not furnished by plaintiff nor did he testify.
“In March, 1960 a hernioplasty was performed by Dr. Philibert, and Dr. Philibert made a written report to plaintiff’s attorney on November 10, 1960, stating that plaintiff’s back pains have been persistent and he had treated him for prostatitis, his diagnosis being acute prostatitis and two hernias. Dr. Philibert attributed the low backache to prostatitis.
“Between August 3, 1960 and plaintiff’s operation for the herniae in March, 1961, Dr. Philibert treated plaintiff as he wanted to clear up the prostatitis before operating. During the period of treatment, plaintiff developed a respiratory infection and, according to Dr. Philibert’s testimony, the operation was performed after these other conditions were cured or arrested. Following the herniae operation, plaintiff returned to work.
“It is therefore apparent from the evidence that from a medical viewpoint, the time lost from work by plaintiff subsequent to August 3rd was for reasons neither connected with plaintiff’s work nor with an injury received in the course thereof. There is no evidence upon which the Court could substantiate a conclusion that plaintiff’s herniae were caused or aggravated by *80 his employment. Plaintiff did not work from the time they were first discovered on August 3rd until they were cured, and there is no evidence of causation in the record.
“It is also significant that prostatitis is- a recurring condition in plaintiff, which will cause a low back pain. It is further significant that Dr. Philibert, who is a general practitioner, testified that his examination of August 3, 1960, during the course of which he gave plaintiff a complete physical and neurological examination, was normal except for the herniae and prostatitis.
“Dr. Philibert testified that some months after his original diagnosis, he had plaintiff hold weights and detected an enlarged muscle in his back, which he attributed as the cause of plaintiff’s back complaints. Although no other doctor confirmed a diagnosis of cause for pain in the lumbro-sacral area, it was Dr. Philibert’s conclusion that plaintiff would get well with work and therapy.
“Plaintiff was examined or treated by Drs. Laramore, Philibert and Roy, as non-specialists, and Drs. Soboloff, Lenoir and Battalora, Sr., all orthopedic specialists. Of all of these doctors who examined or treated plaintiff from the period beginning October 12, 1959 to the date of trial, the only testimony with respect to plaintiff’s back condition, upon which this suit is predicated, is that of Dr. Philibert who recommended work. All of the specialists are in agreement, both plaintiff’s and defendant’s, that plaintiff is able to continue his work, as he is presently doing.
“The Court is of the opinion that plaintiff has not established that he is presently incapacitated as a result of the alleged industrial accidents or that he either lost time from work or is performing his work in pain as a result thereof.”
There is no semblance of error, manifest or otherwise, in the judgment appealed from.
Therefore, the judgment is affirmed.
Affirmed.